IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RONALD LUCE,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GASBUDDY, INC.,**<br><br>Defendant. | Case No.: 6:22-cv-6115<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ronald Luce ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against defendant GasBuddy, Inc. ("GasBuddy" or "Defendant") and alleges as follows:

## INTRODUCTION

1. This lawsuit is brought as a class action on behalf of Plaintiff and thousands of similarly situated GasBuddy users who have been deceived into using GasBuddy's mobile app and payment card by the company's misrepresentations and omissions, in marketing materials, regarding the true operation and risks of the service. These risks include the real and repeated risk of multiple insufficient funds fees ("NSF fees") or overdraft fees imposed by users' banks as a result of automated (and often delayed) GasBuddy transfers from consumers' checking accounts.

2. GasBuddy markets itself as a way for consumers to save money on fuel costs. By signing up for a using the GasBuddy payment card at select gas stations, users may save a few cents per gallon. GasBuddy markets itself as an effortless, simple way to guarantee savings on gas purchases. For example, it states on its website and in internet marketing:

- Fill-ups are **effortlessly deducted** from your linked debit card.
- No credit check required. **Sign up in minutes.**
- No bills, no hassles, and nothing to fund. **Just savings.**

3. In short, GasBuddy prominently markets itself as a service that allows users to save money on gas, with no hassles and nothing but "savings." This is false—and in fact there are huge, undisclosed risks of using the service.

4. GasBuddy also markets itself as a service that "effortlessly deducts" funds from linked checking accounts at the time of purchase, "like a debit card." These representations are false. In fact, the service is nothing "like a debit card," and transactions may be approved even when there are insufficient funds in an account and/or payments may not occur for several days after they are made.

5. GasBuddy's services cause unsuspecting consumers like Plaintiff to incur significant overdraft and NSF fees on their linked bank accounts.

6. Unfortunately, GasBuddy's operation, along with its deceptive and incomplete marketing materials, means that users like Plaintiff end up paying huge amounts of bank fees, which GasBuddy falsely assures users they will not receive and/or fails to warn users about.

7. In its rush to tout itself as convenient, simple, automatic "like a debit card," and providing guaranteed savings, GasBuddy does not disclose that overdraft and NSF fees are a likely and devastating consequence of the use of its service. No reasonable consumer would run this risk.

8. This massive risk is known to GasBuddy but is omitted from all of its marketing.

9. Had Plaintiff and the Class members known of the true operation and risks of the GasBuddy service, they would not have used the GasBuddy service.

10. Plaintiff and the Class members have been injured by GasBuddy's practices. Plaintiff brings this action on behalf of himself, the putative Class, and the general public. Plaintiff seeks actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent GasBuddy from continuing to engage in its illegal practices as described herein.

**COMMON FACTUAL ALLEGATIONS**

A. **Overview**

11. It is free to sign up with GasBuddy. During sign-up, a user provides basic information like name, address, and phone number, as well as your driver's license number, and banking account information.

12. When a consumer downloads the GasBuddy app, or uses the GasBuddy website, the customer is required to create an account in order to place an order for delivery or pickup.

13. In order to do so, a user enters in a name and contact information.

14. While the account creation screen contains a small hyperlink to view GasBuddy's Terms of Service, users are not required affirmatively consent to such terms, such as by clicking a check box.

15. After sign-up, a Pay with GasBuddy card is shipped to the user. The card appears to be like any other debit card or credit card. GasBuddy makes sure its users understand the similarity, stating on the website:

> **Why do you need my checking account?**
> Linking a checking account allows us to keep costs low and give you a discount on every gallon. Every time you swipe your card, we deduct your discount and charge the remainder to your checking account - **kind of like a debit card.**

16. Once the card is activated, it can be inserted at the pump or selected stations, where a small per-gallon discount will be applied.

17. The whole sign-up process takes a few seconds—and at no time during that process does GasBuddy warn potential users of the true risks of using its service. To the contrary, during the checkout and sign-up processes, GasBuddy repeatedly touts itself as a vehicle for automatic and guaranteed "savings" that are applied instantly at the time of payment.

18. The website explains: "**GasBuddy has saved drivers $3.1 billion and is used by more North Americans to save money on gas than any other app.**"

19. While GasBuddy represents consumers that it provides gas savings, it omits other key facts, viz., that using GasBuddy can cost far more than the savings it generates.

20. That is because GasBuddy's services cause unsuspecting consumers like Plaintiff to incur massive fees on their linked bank accounts.

21. GasBuddy misrepresents (and omits facts about) the true nature, benefits, and risks of its service, functioning of which means that users are at extreme and undisclosed risk of expensive bank fees when using GasBuddy. Had Plaintiff been adequately informed of these risks, she would not have used GasBuddy.

22. As alleged herein, Plaintiff had no idea small, automatic GasBuddy transactions could cause $39-each overdraft fees from his bank.

23. GasBuddy also misrepresents the operation of the service. In addition to its promise that the card is "like a debit card," GasBuddy states:

> Pay for gas using the money in your linked bank account.**The card works at 95% of stations.**

24. GasBuddy also promises that payments and discounts are "automatically" applied":

> **Swipe your card** and your discount is automatically applied. It's that easy!

(emphasis in original).

25. GasBuddy's marketing and public communications stress that it is a service that allows users to instantly "pay" for gas. But that too is not true, as paying with the GasBuddy payment card comes with significant delays—delays that mean users no longer have funds in their accounts to pay for their purchases by the time GasBuddy processes their payments.

26. In truth, the GasBuddy payment card is nothing "like a debit card" but is in fact an electronic check—one that GasBuddy does not process promptly and immediately. And unlike paper checks or other electronic checks, GasBuddy does not instantly verify the presence of sufficient funds in a checking account—though it has the capacity to do so.

27. In fact, a GasBuddy payment card transaction occurs over the Automated Clearinghouse ("ACH") network. Because GasBuddy groups debit transactions together, sometimes over several days, then submits giant batches for processing through the network, delay in processing transactions of several days occur.

28. If GasBuddy acted more quickly, transactions would often debit while consumers still had funds in their account. This processing delay means that funds available in consumer checking accounts at the time they made a GasBuddy transaction are often no longer available. That results in overdraft or NSF Fees charged by consumer banks, as described herein.

29. This need not occur. Indeed, technology widely exists for the same-day, virtually instantaneous processing of ACH debit transactions. Moreover, in the context of paper checks, technology also is widely available and widely used by virtually all major retailers to instantly check consumer checking accounts to make sure that sufficient funds exist to cover a paper check. GasBuddy could easily use such technology here to ensure sufficient funds exist in a checking account for a GasBuddy payment card transaction. It chooses not to, in order to save itself transaction costs.

**B.   Plaintiff's Experience**

30. When Plaintiff signed up for GasBuddy and was induced to provide GasBuddy with their highly sensitive banking information, he was not aware that GasBuddy's service had a

significant "catch" and that significant fees and cost could result from use of this supposedly free service.

31. While Plaintiff has saved a few pennies per gallon when using GasBuddy, he has incurred at least $200 in overdraft fees or NSF Fee from his bank as a result of using the card—penalties that far outweigh the benefits of the service.

32. For example, prior to November 17, 2021, Mr. Luce made gas purchase of $17.77, $8 and $7.64 using the GasBuddy payment card at a local gas station. At the time that he inserted his card, Mr. Luce had sufficient funds in his Elmira Savings Bank checking account to pay for the purchases. However, by the time GasBuddy processed the transactions on November 17, 2021, Mr. Luce no longer had sufficient funds in his account. As a result, Elmira Savings Bank assessed **three $39 overdraft fees** (at a total of $117) to Mr. Luce. Had he known the true risks of using the service, Mr. Luce would not have made done so.

33. Moreover, GasBuddy's own processing practices maximized the number of OD/NSF Fees assessed on its users. Specifically, GasBuddy often splits debits it makes on its users' accounts into two or more debits, with each one causing an OD/NSF Fee. If GasBuddy had simply made a single debit on Mr. Luce's account on November 17, 2021, he would be assessed one fee instead of three or more.

    **C.**    **GasBuddy's Deceptive Marketing**

34. In marketing and promotions, GasBuddy describes its service as simple, convenient, and easy—a no-fee way for consumers to save on gas purchases.

35. GasBuddy's marketing never warns consumers of the extreme and crushing NSF and overdraft fee risk of using the service.

36. GasBuddy conceals from users the punishing risk of NSF and overdraft fees on small dollar GasBuddy transactions.

37. GasBuddy's marketing materials—including within the app, in app stores, and on GasBuddy's website—never disclose these risks and material facts, instead luring consumers to sign up for and use the service with promises of ease, convenience, and fee/interest avoidance.

38. GasBuddy knows that its service is likely to cause its users to incur large bank fees.

39. GasBuddy's representations—which all users view during the sign-up process—are false and contain material omissions.

40. GasBuddy misrepresents the true nature, benefits and risks of the service, which targets users with an extreme and undisclosed risk of GasBuddy triggering expensive bank fees. Plaintiff would not have used GasBuddy if he had been adequately informed of the risks of bank fees. As alleged herein, Plaintiff had no idea small, automatic GasBuddy transactions: (1) did not occur immediately, as with other card-based payments; (2) could cause $39 bank fees from his bank; and (3) that GasBuddy would process transactions when his account had insufficient funds.

41. GasBuddy's marketing never discloses the most devastating risk of using the service—any "savings" can be wiped out and outweighed by bank fees associated with using the service.

**PARTIES**

42. Plaintiff Ronald Luce is a citizen and resident of Elmira, New York.

43. Defendant GasBuddy, Inc. is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

44. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a different State than Defendant. The number of members of the proposed Classes in aggregate exceeds 100 users. 28 U.S.C. § 1332(d)(5)(B).

45. This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

46. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action individually and as representatives of all those similarly situated, on behalf of the below-defined Class (the "Class") pursuant to Federal Civil Procedure Rules 23(a), 23(b)(2) and 23(b)(3):

> All persons in the State of New York who used the GasBuddy Service and incurred overdraft or NSF Fees as a result of a GasBuddy transaction.

48. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staffs.

49. This case is appropriate for class treatment because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50. **Numerosity:** The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The precise membership of the Class is unknown to Plaintiff at this time; however, it is estimated that the Class number is greater than one hundred individuals. The identity of such membership is readily ascertainable via inspection of Defendant's books and records or other approved methods. Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.  The Class size is estimated to be in the thousands.  Discovery will reveal the exact number of class members.

51. **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

   a) Whether GasBuddy's representations and omissions about its service are false, misleading, deceptive, or likely to deceive;

   b) Whether GasBuddy failed to disclose the NSF and overdraft fee risks of using its service;

   c) Whether Plaintiff and the Class members were damaged by GasBuddy's conduct;

   d) Whether GasBuddy's actions or inactions violated the consumer protection statute invoked herein; and

   e) Whether Plaintiff are entitled to a preliminary and permanent injunction enjoining Defendant's conduct.

52.     **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class. The common questions of law set forth above are numerous and substantial and stem from GasBuddy's uniform practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

53.     **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were similarly injured through GasBuddy's uniform misconduct as alleged above. As alleged herein, Plaintiff, like the members of the Class, were deprived of monies that rightfully belonged to them. Further, there are no defenses available to GasBuddy that are unique to Plaintiff.

54.     **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class, and because his interests do not conflict with the interests of the other Class members he seeks to represent. Moreover, Plaintiff's attorneys are ready, willing, and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously.

55.     **Superiority:** The nature of this action and the claims available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, GasBuddy would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by individual

Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against GasBuddy, and which would establish potentially incompatible standards of conduct for GasBuddy and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

## FIRST CAUSE OF ACTION
### Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349
### (Asserted on Behalf of the Class)

56. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

57. This cause of action is brought under New York's General Business Law § 349, *et seq*.

58. N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

59. GasBuddy committed deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 by affirmatively and knowingly misrepresenting on its website and mobile app that deceives users into using GasBuddy's mobile app and payment card by the company's misrepresentations and omissions, in marketing materials, regarding the true operation and risks of the service. These risks include the real and repeated risk of multiple insufficient funds fees NSF fees or overdraft fees imposed by users' banks as a result of automated (and often delayed) GasBuddy transfers from consumers' checking accounts.

60. In the conduct of its business, trade, and commerce, and in furnishing services in New York, GasBuddy's actions were directed at consumers.

61. In the conduct of its business, trade, and commerce, and in furnishing services in New York, GasBuddy engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

a. GasBuddy misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing and advertising that it would only charge overdraft fees when an overdraft actually occurred; and

b. GasBuddy omitted, suppressed, and concealed the material fact that users could be charged fees on their checking accounts.

65. GasBuddy systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Class.

66. GasBuddy willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether they violated NYGBL § 349.

67. As a direct and proximate result of GasBuddy's deceptive trade practices, members of the New York Class suffered injury and/or damages, including assessment of OD Fees on APPSN transactions.

68. Had Plaintiff known he could be charged NSF Fees by using the GasBuddy app or card, he would have made different payment decisions so as to avoid incurring such fees.

69. As a result of GasBuddy's violations of NY GBL § 349, Plaintiff and members of the putative Classes have paid and will continue to pay excessive fees to GasBuddy. Accordingly, they have suffered and will continue to suffer actual damages.

70. Accordingly, Plaintiff and New York Class members are entitled to relief under

N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the respective Classes;

B. Declaring that GasBuddy's policies and practices as described herein constitute a breach of contract, a breach of the covenant of good faith and fair dealing or unjust enrichment, and/or a violation of N.Y. Gen. Bus. Law;

C. Enjoining GasBuddy from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to GasBuddy by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Punitive and exemplary damages;

H. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

J. Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  March 9, 2022    **REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Facsimile:   (212) 253-4272
*mreese@reesellp.com*

**KALIEL GOLD PLLC**
Jeffrey D. Kaliel (to be admitted *pro hac vice*)
Sophia Gold (to be admitted *pro hac vice*)
1100 15th Street NW, 4th Floor
Washington, DC  20005
Telephone: (202) 350-4783
*jkaliel@kalielgold.com*
*sgold@kalielgold.com*

*Counsel for Plaintiff and the Proposed Class*